IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL MOKSHEFSKI,                    :        Civil No. 3:23-cv-1071
                                       :
            Plaintiff                  :        (Judge Mariani)
                                       :
      v.                               :
                                       :
MORRIS HOUSER, et al.,                 :
                                       :
            Defendants                 :

## MEMORANDUM

Plaintiff Michael Mokshefski ("Mokshefski"), an inmate in the custody of the

Pennsylvania Department of Corrections ("DOC") commenced this civil rights action

pursuant to 42 U.S.C. § 1983.  (Doc. 1).  On July 13, 2023, the Court conducted the

required statutory screening of Mokshefski's complaint pursuant to 28 U.S.C. § 1915A.

Upon conducting this initial statutorily mandated screening, the Court issued an Order

directing Mokshefski to file an amended complaint.  (Doc. 10).  Mokshefski subsequently

filed an amended complaint, wherein he alleges that Defendants' failure to provide him

adequate medical services violated his rights under the Eighth Amendment, the Americans

with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and state law.  (Doc. 11).  Among

the named Defendants are DOC Secretary Laurel Harry, Director of Healthcare Services

Erica Benning, Superintendent Morris Houser, Deputy Superintendent Bradley Booher,

Deputy Superintendent Curtis Grice, Corrections Health Care Administrator Kim Ardery, and Nurse Supervisor Lori Campbell (collectively, the "Commonwealth Defendants").[1]

Presently before the Court is the Commonwealth Defendants' motion (Doc. 23) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Mokshefski failed to respond to the motion and the time for responding has now passed.[2] Therefore, the motion is deemed unopposed and ripe for resolution. For the reasons that follow, the Court will grant the motion.

## I.   Factual Background & Procedural History

According to the amended complaint, Mokshefski broke his shoulder while incarcerated at the Berks County Prison on or about July 22, 2021. (Doc. 11, p. 7). He alleges that he was diagnosed with a broken shoulder on November 10, 2021, and surgery was ordered at that time. (*Id.*).

On March 24, 2022, Mokshefski was transferred to the State Correctional Institution at Smithfield, and it was confirmed that his shoulder was broken. (*Id.*).

Approximately one month later, on April 22, 2022, Mokshefski was transferred to the State Correctional Institution at Benner-Township ("SCI-Benner"). (*Id.*). The following day,

---

[1]   Also named as Defendants are Jacqueline Howard, Jodi Hicks/Jodi Fletcher, Tiffany Sottile, Taylor Talasky, Cristina Bickle, Maepearl St. George and, Wellpath, LLC (collectively, the "medical Defendants"). The medical Defendants also filed a Rule 12(b) motion (Doc. 32) to dismiss. The Court will address the medical Defendants' motion by separate Memorandum and Order.

[2]   Mokshefski was directed to file a brief in opposition to the Commonwealth Defendants' motion and was admonished that failure to file an opposition brief would result in Defendants' motion being deemed unopposed. (Doc. 42) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

on April 23, 2022, medical staff treated Mokshefski, and he allegedly informed them about his broken shoulder.  (*Id.*).  He further informed medical staff that he had pain, limited mobility, and difficulty with daily tasks, which he attributed to lack of surgery.  (*Id.*).

On May 9, 2022, Mokshefski filed a grievance related to his shoulder.  (*Id.*).  He also filed a request to medical on May 21, 2022, inquiring about shoulder surgery.  (*Id.*).

On June 22, 2022, Mokshefski was sent to an outside doctor and underwent an x-ray.  (*Id.* at p. 8).  The doctor confirmed that his shoulder was broken, and that surgery was needed.  (*Id.* at p. 8).  Mokshefski was then treated by a second outside doctor on September 23, 2022, and he underwent another x-ray.  (*Id.*).  This doctor also confirmed the broken shoulder and allegedly expressed concerns of further injury due to delayed surgery. (*Id.*).  On December 13, 2022, Mokshefski saw a third "ortho" doctor, who confirmed the diagnosis and recommended surgery.  (*Id.*).  On January 11, 2023, Mokshefski asserts that he spoke with a neurologist on video, who requested medical records to clear him for surgery.  (*Id.*).

On January 31, 2023, a physician's assistant at the prison allegedly told Mokshefski that he would not undergo surgery because it was too expensive.  (*Id.*).  On February 2, 2023, he filed a grievance concerning the denial of medical care.  (*Id.*).  Mokshefski alleges that after he filed this grievance, medical staff at SCI-Benner harassed him.  (*Id.*).

On March 10, 2023, another physician's assistant at the prison allegedly told Mokshefski that his surgery was being delayed in hopes that he would be released on

3

parole in May of 2023.  (*Id.*).  Mokshefski asserts that he filed an unsuccessful grievance

about this incident.  (*Id.*).  Mokshefski was denied parole in May of 2023.  (*Id.*).  He alleges

that medical staff continues to delay his treatment until he is released on parole.  (*Id.*).

     For relief, Mokshefski requests compensatory and punitive damages for alleged

violation of his rights under the Eighth Amendment, and he asserts a state law claim of

medical malpractice.  (*Id.* at pp. 10-11).  He also requests immediate surgery and

rehabilitation, and access to employment and recreational services for alleged violations of

the ADA and RA.  (*Id.* at pp. 11-12).

     The Commonwealth Defendants move to dismiss the amended complaint on the

following grounds: (1) the amended complaint fails to comply with Federal Rule of Civil

Procedure 8; (2) Mokshefski failed to allege the Commonwealth Defendants' personal

involvement; (3) Mokshefski failed to state a plausible Eighth Amendment claim; (4) the

medical malpractice claim fails as a matter of law; and (5) Mokshefski failed to state a

plausible claim under the ADA and RA.  (Doc. 29).

## II.   **Legal Standard**

     A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege

"enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must

aver "factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations,…a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but…disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

5

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III. Discussion

### A. Federal Rule of Civil Procedure Rule 8(a)

The Commonwealth Defendants first argue that Mokshefski's amended complaint fails to comply with Federal Rule of Civil Procedure 8 and is a "shotgun pleading." (Doc. 29, pp. 6-8).

Federal Rule of Civil Procedure 8 establishes the general rules of pleading. *See* FED. R. CIV. P. 8. Rule 8(a) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8(d)(1) speaks to factual allegations, requiring that "[e]ach allegation…be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). These rules task the plaintiff to provide "the defendant notice of what the…claim is and the grounds upon which it rests." *Phillips*, 515 F.3d at 232

6

(quoting *Twombly*, 550 U.S. at 555).  This standard requires more than legal labels and conclusory assertions: a complaint must include enough facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Complaints that violate Rule 8 are often referred to as "shotgun pleadings."  *See Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017).  "The Third Circuit has criticized 'the all too common shotgun pleading approach' to complaints," which conflicts with the mandates of Rule 8(a)(2).  *See id.* (quoting *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031, n. 13 (3d Cir. 1988)).  The Court of Appeals for the Eleventh Circuit has addressed shotgun pleadings in detail, and "district courts within the Third Circuit often cite to the Eleventh Circuit for this law." *Id.* at 859, n.3; *see Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320-1323 (11th Cir. 2015).  There are four readily identifiable categories of shotgun pleadings, including complaints that (1) contain multiple counts where each count adopts the allegations of all preceding counts; (2) are replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) do not separate into each count each cause of action or claim for relief; and (4) assert multiple claims against multiple defendants without specifying which of them are responsible for which acts or omissions.  *Bartol*, 251 F. Supp. 3d at 859 (citing *Weiland*, 792 F.3d at 1321-1323).  "And, although there are several characteristics that can make a complaint a shotgun pleading, they all have in common one thing: 'fail[ure] to give the defendants adequate notice of the claims against them and the grounds upon which each

7

claim rests.'" *Grande v. Starbucks Corp.*, Civil Action No. 18-04036, 2019 WL 1455445 at
*3 (E.D. Pa. Apr. 1, 2019).

Although Mokshefski's amended complaint has some of the characteristics of a
shotgun pleading, the Court will not dismiss the action on this ground.  The Court will
proceed to address Mokshefski's claims.

### B.   Lack of Personal Involvement

Individual liability will be imposed under § 1983 only if the state actor played an
"affirmative part" in the alleged misconduct.  *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d
Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  Liability
"cannot be predicated solely on the operation of respondeat superior."  *Id.*  In other words,
defendants in § 1983 civil rights actions "must have personal involvement in the alleged
wrongs…shown through allegations of personal direction or of actual knowledge and
acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at
1207-08.  Acquiescence requires both contemporaneous knowledge of the alleged
wrongdoing and direct supervisory authority over the subordinate actor.  *Atkinson*, 316 F.3d
at 271; *Rode*, 845 F.2d at 1207-08.  Such allegations, however, must be made with
appropriate particularity in that a complaint must allege the particulars of conduct, time,
place, and person responsible.  *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08.
When a plaintiff merely hypothesizes that an individual defendant may have had knowledge

of or personal involvement in the deprivation of his or her rights, individual liability will not follow. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

Mokshefski failed to allege the personal involvement of the Commonwealth Defendants. Although he named Laurel Harry, Erica Benning, Morris Houser, Bradley Booher, Curtis Grice, Kim Ardery, and Lori Campbell as Defendants, there are no factual averments relating to these Defendants in the body of the amended complaint. Mokshefski does not include any specific allegations of wrongdoing that would establish personal involvement by any of the Commonwealth Defendants in the purported violations—he only references these individuals in the caption and prayer for relief. This style of pleading is patently inadequate since it fails to allege facts that give rise to a plausible claim for relief against the Commonwealth Defendants. In order to state a § 1983 claim, Mokshefski was required to specify each Defendant's personal involvement in the alleged constitutional misconduct. He failed to do so.

Moreover, to the extent that Mokshefski attempts to hold the Commonwealth Defendants liable based on their supervisory roles, this claim also fails. It is well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Rode*, 845 F.2d at 1207. Insofar as Mokshefski's claims against the Commonwealth Defendants rely on a *respondeat superior* theory of liability, they are entitled to dismissal on this ground. Accordingly, the Court will dismiss the claims against the Commonwealth Defendants for lack of personal

involvement.  *See Hudson v. City of McKeesport*, 244 F. App'x 519 (3d Cir. 2007) (nonprecedential) (affirming dismissal of defendant who was only named in caption of case).

### B.    Eighth Amendment Claim

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.  *See Farmer v. Carlson*, 685 F.

10

Supp. 1335, 1339 (M.D. Pa. 1988). Moreover, "[i]f a prisoner is under the care of medical experts…a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official…will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

In the amended complaint, Mokshefski alleges that medical staff at SCI-Benner provided inadequate medical care for his shoulder. (Doc. 11). Mokshefski asserts that he presented to the medical department on several occasions, but medical staff failed to properly treat his shoulder and delayed surgery. (*Id.*). Mokshefski has failed to state a claim against the Commonwealth Defendants. By Mokshefski's own averments, the Commonwealth Defendants are not medical providers and have not treated him. It is clear that Secretary Harry, Director of Healthcare Services Benning, Superintendent Houser, Deputy Superintendent Booher, Deputy Superintendent Grice, Corrections Health Care Administrator Ardery, and Nurse Supervisor Lori Campbell are non-medical prison personnel in that are not responsible for directly rendering medical care to Mokshefski. *See, e.g., Thomas v. Dragovich*, 142 F. App'x 33, 39 (3d Cir. 2005) (noting that Health Care Administrators "are undisputably administrators, not doctors"). Because the Commonwealth Defendants are not medical personnel, they cannot be considered deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who

was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d

Cir. 1991).  Moreover, Mokshefski does not plead facts from which a plausible inference

could be drawn that the Commonwealth Defendants had "reason to believe (or actual

knowledge) that prison doctors or their assistants [were] mistreating (or not treating) [him]."

*Spruill*, 372 F.3d at 236.  The Court will grant the Commonwealth Defendants' motion to

dismiss the Eighth Amendment inadequate medical care claim.

### C.   Medical Malpractice Claim

The Commonwealth Defendants also seek dismissal of Mokshefski's medical

malpractice claim against Defendants Harry, Benning, Houser, Booher, and Grice, arguing

that the doctrine of sovereign immunity bars this claim against state employees.  (Doc. 29,

pp. 11-12).  Defendants Harry, Benning, Houser, Booher, and Grice are entitled to

sovereign immunity with respect to Mokshefski's state law claim as it is beyond dispute that

"[t]he Department of Corrections is an agency of the Commonwealth and the Defendants,

as employees of an agency of the Commonwealth, are entitled to the protection afforded by

sovereign immunity."  *McGrath v. Johnson*, 67 F.Supp.2d 499, 511 (E.D. Pa. 1999) (citing

*Maute v. Frank*, 441 Pa. Super. 401, 402, 657 A.2d 985, 986 (1995) (state prison officials

enjoy sovereign immunity); *Robles v. Pennsylvania Dep't of Corrections*, 718 A.2d 882, 884

(Pa. Commw. Ct. 1998) (same)), *aff'd*, 35 F. App'x 357 (3d Cir. 2002).  As a general matter,

subject only to ten specific statutory exceptions not applicable to Defendants Harry,

Benning, Houser, Booher, and Grice, this sovereign immunity bars state law tort claims like

the one alleged here, since Commonwealth employees are immune from liability for either

negligence or intentional torts.[3]  *McGrath*, 67 F.Supp.2d at 511, *aff'd*, 35 F. App'x 357 (3d

Cir. 2002).  Therefore, the Court will dismiss this claim against Defendants Harry, Benning,

Houser, Booher, and Grice.

The Commonwealth Defendants acknowledge that Corrections Health Care

Administrator Ardery and Nurse Supervisor Campbell are likely not entitled to sovereign

immunity pursuant to the medical-professional liability exception to sovereign immunity.

(Doc. 29, p. 12; 42 PA. CONS. STAT. ANN. § 8522(b)(2)).  However, they argue that

Mokshefski nevertheless fails to state a medical malpractice claim against them.  The Court

agrees.  In order to sustain a cause of action for medical malpractice, a plaintiff must

establish four elements: (1) the physician owed a duty to the patient; (2) the physician

breached that duty; (3) the breach of duty was the proximate cause of, or a substantial

factor in, bringing about the harm suffered by the patient; and (4) the damages suffered by

the patient were a direct result of that harm.  *See Rauch v. Mike-Mayer*, 783 A.2d 815 (Pa.

Super. 2001).  There are simply no allegations against Defendants Ardery and Campbell in

the amended complaint demonstrating that they participated in Mokshefski's medical care or

---

[3]    The ten categories for which sovereign immunity will not apply are: (1) vehicles in the
possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth
agency medical facilities or institutions; (3) the care, custody, or control of personal property; (4) a
dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous conditions of
highways created by potholes or sinkholes; (6) the care, custody, or control of animals; (7) liquor store
sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse.  *See* 42 PA. CONS.
STAT. ANN. § 8522(b).

breached any duty owed to him.  (*See* Doc. 11).  The Commonwealth Defendants' motion will be granted on this ground.

### D.    Claim under the ADA and RA

Mokshefski fares no better with respect to his claim that the Commonwealth Defendants violated the ADA and RA.  "Whether suit is filed under the Rehabilitation Act or under the [ADA], the substantive standards for determining liability are the same." *McDonald v. Pa. Dep't of Pub. Welfare*, 62 F.3d 92, 95 (3d Cir. 1995).  However, the Rehabilitation Act also requires a plaintiff to show that he was excluded from a "program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132(1).  Individual defendants, however, are not public entities within the meaning of Title II of the ADA and, therefore, are not subject to suit.  *Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002) (individuals are not subject to liability under "Titles I or II of the ADA, which prohibit discrimination by employers and public entities respectively."); *Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (nonprecedential) (concluding that plaintiff's "claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability") (citations omitted).

Thus, Mokshefski cannot maintain his ADA claim against the Commonwealth Defendants in their individual capacities.

To the extent Mokshefski is suing the Commonwealth Defendants in their official capacities, the claim is viable as the Supreme Court has held that Title II of the ADA validly abrogates sovereign immunity as to state conduct that violates the Constitution. *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Durham v. Kelley*, 82 F.4th 217, 224 (3d Cir. 2023) ("state officers can be sued for damages in their official capacities for purposes of the ADA and RA, unless barred by the Eleventh Amendment") (emphasis in original).

In order to determine whether a plaintiff may sue a State for damages under Title II, courts must "(1) identify which aspects of the State's alleged conduct violated Title II; (2) identify to what extent such conduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, determine whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Bowers v. NCAA*, 475 F.3d 524, 553 (3d Cir. 2007). Pursuant to this standard, Mokshefski must initially state a valid claim under Title II of the ADA, and to do this he must demonstrate that: (1) he is a qualified individual; (2) with a disability; and (3) he was denied the opportunity to participate in or benefit from the services, programs, or activities of a public entity, or was otherwise subject to discrimination

by that entity; (4) by reason of his disability. *Bowers*, 475 F.3d at 553 n.32; 42 U.S.C. § 12132.

Based upon a careful review of the amended complaint, the Court finds that there are no specific allegations that Mokshefski is being denied access to any benefits, programs, or activities due to any disability.  Although he generally asserts that he has been denied employment and recreation activities, he has not alleged a claim of discrimination relating to those activities and does not specifically elaborate how the Commonwealth Defendants discriminated against him.  While Mokshefski may have been unable to perform certain activities due to his alleged injury, it does not necessarily follow that the Commonwealth Defendants denied him the opportunity to work or partake in recreation as a discriminatory act based on his injury.  Nor does Mokshefski allege any facts that demonstrate that the alleged inadequate medical care he received was because of a disability.  *See, e.g.*, *Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir.2006) (finding that Iseley had not claimed that he was excluded from any program on the basis of his disability but rather alleged "that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions") (citing *Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996)).  The Court will dismiss Mokshefski's ADA and RA claims against the Commonwealth Defendants in their official capacities.

IV.   **Leave to Amend**

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant Mokshefski leave to amend his complaint unless amendment would be inequitable or futile.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002).  The above claims against the Commonwealth Defendants are factually and legally flawed; thus, the Court concludes that granting Mokshefski leave to file a second amended complaint would be both futile and inequitable.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where an inmate plaintiff "has already had two chances to tell his story...giving him further leave to amend would be futile.").

V.   **Conclusion**

Based on the foregoing, the Court will grant the Commonwealth Defendants' motion (Doc. 23) to dismiss.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: July 23, 2024