IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MOKSHEFSKI, | : | Civil No. 3:23-cv-1071 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| MORRIS HOUSER, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Michael Mokshefski ("Mokshefski"), an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") commenced this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Upon receipt of Mokshefski's original complaint, the Court conducted its statutorily mandated screening pursuant to 28 U.S.C. § 1915A and issued an Order directing Mokshefski to file an amended complaint. (Doc. 10). Mokshefski subsequently filed an amended complaint, wherein he alleges that Defendants' failure to provide him adequate medical services violated his rights under the Eighth Amendment, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and state law. (Doc. 11). The remaining Defendants are Medical Director Jacqueline Howard, Healthcare Services Administrator Jodi Hicks/Jodi Fletcher, Physician's Assistant Tiffany Sottile, Physician's Assistant/Nurse Practitioner Taylor Talasky, Physician's Assistant Maepearl St. George, Outside Clinical Coordinator Cristina Bickle, and Wellpath, LLC, formerly known as Correct Care Solutions, LLC ("Wellpath"), (collectively, the "medical Defendants").

Before the Court is the medical Defendants' motion (Doc. 32) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Mokshefski failed to respond to the motion and the time for responding has now passed.[1] Therefore, the motion is deemed unopposed and ripe for resolution. For the reasons that follow, the motion will be granted in part and denied in part.

I. **Factual Background & Procedural History**

According to the amended complaint, Mokshefski broke his shoulder while incarcerated at the Berks County Prison on or about July 22, 2021. (Doc. 11, p. 7). He alleges that he was diagnosed with a broken shoulder on November 10, 2021, and surgery was ordered at that time. (*Id.*).

On March 24, 2022, Mokshefski was transferred to the State Correctional Institution at Smithfield, and it was confirmed that his shoulder was broken. (*Id.*).

Approximately one month later, on April 22, 2022, Mokshefski was transferred to the State Correctional Institution at Benner-Township ("SCI-Benner"). (*Id.*). The following day, on April 23, 2022, medical staff treated Mokshefski, and he allegedly informed them about his broken shoulder. (*Id.*). He further informed medical staff that he had pain, limited mobility, and difficulty with daily tasks, which he attributed to lack of surgery. (*Id.*).

---

[1] Mokshefski was directed to file a brief in opposition to the medical Defendants' motion and was admonished that failure to file an opposition brief would result in Defendants' motion being deemed unopposed. (Doc. 42) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

2

On May 9, 2022, Mokshefski filed a grievance related to his shoulder. (*Id.*). He also filed a request to medical on May 21, 2022, inquiring about shoulder surgery. (*Id.*).

On June 22, 2022, Mokshefski was sent to an "ortho" doctor and underwent an x-ray. (*Id.* at p. 8). The doctor confirmed that his shoulder was broken, and that surgery was needed. (*Id.* at p. 8). Mokshefski was then treated by a second "ortho" doctor on September 23, 2022, and he underwent another x-ray. (*Id.*). This doctor also confirmed the broken shoulder and allegedly expressed concerns of further injury due to delayed surgery. (*Id.*). On December 13, 2022, Mokshefski saw a third "ortho" doctor, who confirmed the diagnosis and recommended surgery. (*Id.*). On January 11, 2023, Mokshefski spoke with a neurologist on video, who requested medical records to clear him for surgery. (*Id.*).

On January 31, 2023, Defendant St. George, a physician's assistant at the prison, allegedly told Mokshefski that the DOC and Wellpath would not pay for his shoulder surgery because it was too expensive. (*Id.*). On February 2, 2023, Mokshefski filed a grievance concerning the denial of medical care. (*Id.*). Mokshefski alleges that after he filed this grievance, medical staff at SCI-Benner harassed him. (*Id.*).

On March 10, 2023, Defendant Talasky, a physician's assistant at the prison, allegedly told Mokshefski that his surgery was being delayed in hopes that he would be released on parole in May of 2023. (*Id.*). Mokshefski asserts that he filed an unsuccessful grievance about this incident. (*Id.*). Mokshefski was denied parole in May of 2023. (*Id.*). He alleges that medical staff continues to delay his treatment until he is released on parole.

3

(*Id.*). He further alleges that the DOC and Wellpath have a policy of denying medical services due to costs, and delaying medical services until inmates are released. (*Id.* at p. 9).

For relief, Mokshefski requests compensatory and punitive damages for alleged violation of his rights under the Eighth Amendment, and he asserts a state law claim of medical malpractice. (*Id.* at pp. 10-11). He also requests immediate surgery and rehabilitation, and access to employment and recreational services for alleged violations of the ADA and RA. (*Id.* at pp. 11-12).

The medical Defendants move to dismiss the amended complaint on the following grounds: (1) Mokshefski failed to plead facts to establish a claim against Wellpath; (2) Mokshefski failed to state a plausible Eighth Amendment claim against Howard, Hicks/Fletcher, Sottile, Talasky, Bickle, and St. George; (3) Mokshefski failed to adequately allege a medical malpractice claim against Howard, Hicks/Fletcher, Sottile, Talasky, Bickle, and St. George; and (4) Mokshefski failed to state a plausible claim under the ADA and RA against all medical Defendants. (Doc. 33).

## II.  Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations,...a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but...disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III. Discussion

### A. *Monell* Claim against Wellpath

Mokshefski asserts a *Monell* claim against Wellpath, a private corporation that provides healthcare services to Pennsylvania state inmates under a contract with the DOC. Under § 1983, a private corporation contracted by a prison to provide healthcare for inmates cannot be held liable for Eighth Amendment violations on a *respondeat superior* theory. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003). Rather, pursuant to *Monell*, a private corporation can be held liable for constitutional violations only if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978) (subjecting municipalities to liability for policies or customs that cause constitutional deprivations);

6

*Natale*, 318 F.3d at 584 (applying *Monell* to a private company providing medical services to inmates). *See also Weigher v. Prison Health Servs.*, 402 F. App'x 668, 669-70 (3d Cir. 2010) (nonprecedential) (noting that a private corporation providing medical service at a state correctional facility cannot be held liable under a theory of *respondeat superior* in a § 1983 suit).

Thus, to prevail on his § 1983 claim against Wellpath, Mokshefski must establish that "there was a relevant [Wellpath] policy or custom, and that the policy caused the constitutional violation" for which he seeks relief. *See Natale*, 318 F.3d at 583-84. "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir.1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)), *superseded in part by statute*, Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1072, § 102. A course of conduct not expressly authorized by law becomes a "custom" when the challenged "practices of state officials [are] so permanent and well settled" as to virtually constitute law. *Monell*, 436 U.S. at 690. In order to establish Wellpath's § 1983 liability under either a policy or a custom argument, "it is incumbent upon [plaintiff] to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews*, 895 F.2d at 1480 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). The "policymaker" is the person who "has final,

unreviewable discretion to make a decision or take an action," and who is or is not a policymaker is determined by reference to state law. *Andrews*, 895 F.2d at 1481.

Mokshefski's *Monell* claim against Wellpath is minimally sufficient to survive the medical Defendants' motion to dismiss. Mokshefski claims that Wellpath, as the provider of healthcare services to inmates, implemented policies or customs that were deliberately indifferent to the serious medical needs of inmates and that directly caused him to receive deficient medical care. The medical Defendants argue that the allegations fail to identify "any policy or procedure that would state a claim against a prison medical services provider" and fail to plead a constitutional violation. (Doc. 33, pp. 5-12). However, for pleading purposes, Mokshefski adequately identifies the alleged policies upon which he bases his claim.

The denial of medical care, when based on non-medical factors such as cost, may violate the Eighth Amendment. *See Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674 (3d Cir. 2011) (nonprecedential); *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). However, a "naked assertion" that defendants considered cost in making a medical decision is insufficient to state a claim for a violation of the Eighth Amendment, "as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." *Winslow*, 406 F. App'x at 674 (citing *Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997)). Thus, a

conclusory statement that a corporation had a policy of cutting costs is insufficient to state a claim for liability under the Eighth Amendment. *Id.*

Mokshefski does more than merely allege that Wellpath has a policy or custom of reducing medical care and treatment to keep costs down. He also alleges that his shoulder surgery was delayed for several months to evade the costs associated with providing adequate treatment. (Doc. 11, p. 8). In support, he alleges that Defendants St. George and Talasky told him that the DOC and Wellpath would not pay for his shoulder surgery because it was too expensive. (*Id.*). Mokshefski maintain that Wellpath has a policy of "deny[ing] medical services outright due to costs" and "delay[ing] medical services until the inmate leaves the facility", and that the policy is "widely known" by DOC employees. (*Id.* at p. 9). Mokshefski infers that Wellpath knew this policy posed a risk of harm to inmates because it required medical providers to delay or deny treatment. (*Id.*). Mokshefski posits that this policy prompted the medical Defendants to "delay medical services to Plaintiff in the hope that he paroled out, due to costs." (*Id.*). These allegations are sufficient at this stage of the case. In sum, the amended complaint is adequate to state a *Monell* claim against Wellpath, and the medical Defendants' motion to dismiss this claim will be denied.

### B. Eighth Amendment Claim against Howard, Hicks/Fletcher, Sottile, Bickle, St. George, and Talasky

#### 1. *Defendants St. George and Talasky*

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate

9

indifference to that need." *Natale*, 318 F.3d at 582 (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cnty.*, 834 F.2d at 347. In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).

In the amended complaint, Mokshefski alleges that medical staff at SCI-Benner provided inadequate medical care for his shoulder. (Doc. 11). Mokshefski asserts that he was first diagnosed with a broken shoulder on November 10, 2021, and surgery was ordered at that time. (*Id.* at p. 7). After he was transferred to SCI-Benner on April 22, 2022, Mokshefski was allegedly treated by out-of-facility physicians on June 22, 2022, September

23, 2022, and December 13, 2022, and each physician recommended shoulder surgery. (*Id.* at p. 8). He further avers that a neurologist treated him on January 11, 2023, to obtain medical records to clear him for surgery. (*Id.*).

Mokshefski then alleges that, on January 31, 2023, Defendant St. George informed him that the DOC and Wellpath would not pay for his shoulder surgery because it was too expensive. (*Id.* at p. 8). He similarly alleges that, on March 10, 2023, Defendant Talasky informed him that his surgery was delayed in hopes that he would be released on parole. (*Id.*). As a result of this alleged denial of medical care, Mokshefski asserts that he suffered from pain and risk of further damage to his shoulder. (*Id.* at p. 10).

It is plausible that evidence could reveal that Mokshefski's medical treatment was delayed for non-medical reasons or that Defendants St. George and Talasky, as physician's assistants, continued a course of treatment they knew was "painful, ineffective, or entail[ed] a substantial risk of serious harm." *Williams v. Kort*, 223 F. App'x 95, 100 (3d Cir. 2007) (nonprecedential) (citing *Rouse*, 182 F.3d at 197 (additional citations omitted)). Thus, accepting the allegations as true and drawing all reasonable inferences in favor of Mokshefski, the medical Defendants' motion to dismiss will be denied with respect to this claim against Defendants St. George and Talasky.

### 2. *Defendants Howard, Hicks/Fletcher, Sottile, and Bickle*

Individual liability will be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d

Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of respondeat superior." *Id.* In other words, defendants in § 1983 civil rights actions "must have personal involvement in the alleged wrongs...shown through allegations of personal direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08. Acquiescence requires both contemporaneous knowledge of the alleged wrongdoing and direct supervisory authority over the subordinate actor. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08. Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

Mokshefski failed to allege the personal involvement of Defendants Howard, Hicks/Fletcher, Sottile, or Bickle. In his amended complaint, Mokshefski identifies Howard, Hicks/Fletcher, Sottile, and Bickle as Defendants. (Doc. 11). These four individuals are listed in the caption of the amended complaint and mentioned again in its prayer for relief (*id.* at pp. 1, 3-4, 10), but nowhere else. Mokshefski does not allege any occasion where these individuals treated him. Because a named defendant must be shown through the complaint's allegations to have been personally involved in the events or occurrences on

which a plaintiff's claims are based, and because Mokshefski's pleadings lack any averments of fact concerning Defendants Howard, Hicks/Fletcher, Sottile, or Bickle, they are entitled to dismissal.

### C. Medical Malpractice Claim against Howard, Hicks/Fletcher, Sottile, Talasky, Bickle, and St. George

The medical Defendants next argue that Mokshefski failed to plausibly plead a medical malpractice claim and failed to comply with Pennsylvania's certificate of merit requirements. (Doc. 33, pp. 15-17; Doc. 38).

In Pennsylvania, medical negligence, or medical malpractice, is defined as "the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (citing *Hodgson v. Bigelow*, 7 A.2d 338 (Pa. 1939)). The existence of an injury, by itself, does not prove a doctor's negligence. *Mitchell v. Shikora*, 209 A.3d 307, 315 (Pa. 2019) (citations omitted). Rather, to establish a cause of action for negligence under Pennsylvania law, a plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *See Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (citing *In re TMI*, 67 F.3d 1103, 1117 (3d Cir. 1995)).

Pennsylvania Rule of Civil Procedure 1042.3 requires a plaintiff alleging professional negligence to file a certificate of merit within 60 days of filing the complaint. PA. R. CIV. P. 1042.3. The certificate must include one of the following: a written attestation by "an appropriate licensed professional" that there is a "reasonable probability that the care, skill or knowledge exercised or exhibited" by the defendant "fell outside acceptable professional standards," and that this was the cause of the plaintiff's injuries; a statement that the claim against the defendant is based only on the professional negligence of those for whom the defendant is responsible; or a statement that expert testimony is unnecessary for the plaintiff's claim to proceed. PA. R. CIV. P. 1042.3(a)(1)-(3). Failure to file a certificate of merit is fatal to a plaintiff's claim. PA. R. CIV. P. 1042.7. The requirements of Rule 1042.3 are substantive in nature and, therefore, federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-65 (3d Cir. 2011); *Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 944 (3d Cir. 2007) (nonprecedential). This requirement applies with equal force to counseled complaints and to *pro se* medical malpractice actions brought under state law. *See Hodge v. Dep't of Justice*, 372 F. App'x 264, 267 (3d Cir. 2010) (nonprecedential) (affirming district court's dismissal of medical negligence claim for failure to file a certificate of merit).

The Pennsylvania Supreme Court has noted that "[b]ecause the negligence of a physician encompasses matters not within the ordinary knowledge and experience of

laypersons[,] a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Toogood*, 824 A.2d at 1145. A very narrow exception applies "where the matter is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons." *Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (Pa. 1997).

On October 12, 2023, the medical Defendants filed a Notice of Intention to Seek a Judgment of Non Pros for Failure to File Certificates of Merit pursuant to Pennsylvania Rule of Civil Procedure 1042.7. (Doc. 38). Mokshefski was required to file, in accordance with Pennsylvania Rule 1042.3, a certificate of merit producing expert testimony to opine that the medical Defendants deviated from the acceptable professional standard. The record reflects that a certificate of merit was not filed, and Mokshefski did seek an enlargement of time in which to do so. Nor did he make a substantial effort to comply with the rule or provide a reasonable excuse for failing to do so. Mokshefski's failure to file a certificate of merit is fatal to his medical malpractice claim. The Court will dismiss Mokshefski's medical malpractice claim based on his failure to comply with Pennsylvania's certificate of merit requirements. *See, e.g., Booker v. United States*, 366 F. App'x 425, 427 (3d Cir. 2010) (nonprecedential) (the usual consequence for failing to file a certificate of merit that complies with Rule 1042.3 is dismissal of the claim without prejudice).

### D. Violation of The Americans with Disabilities Act & Rehabilitation Act

Lastly, the medical Defendants argue that Mokshefski's ADA and RA claims concerning their alleged failure to provide proper medical care is not cognizable against them because they are not proper Defendants for a private cause of action under Title II of the ADA and Section 504 of the RA, and because Mokshefski may not seek a remedy for medical negligence under these acts. (Doc. 33, p. 17-20). The Court agrees.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a claim under Title II of the ADA, a plaintiff must allege that: "(1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.'" *Haberle v. Troxell*, 885 F.3d 170, 178-79 (3d Cir. 2018) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)). The RA requires the same showing but applies only to "any program or activity receiving Federal financial assistance" and requires a plaintiff to demonstrate that their disability was the sole reason for the discrimination, not merely one reason. 29 U.S.C. § 794(a); *CG v. Pa. Dep't Educ.*, 734 F.3d 229, 235-36 (3d Cir. 2013).

For prongs one and two of the necessary analysis, Mokshefski has arguably alleged sufficient facts by asserting his limited mobility due to his shoulder injury. Particularly relevant here is the third prong—whether Mokshefski has alleged that he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity. Title II of the ADA defines "public entity" as follows: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority[.]" 42 U.S.C. § 12131(1).

While a state prison falls within the statutory definition of a "public entity" as understood by Title II of the ADA, *see Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998), a private corporation contracting with that prison does not qualify as "public entity" subject to suit under the ADA or the Rehabilitation Act. *See Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015) (nonprecedential) (concluding, that for purposes of the ADA, "a private corporation is not a public entity merely because it contracts with a public entity to provide some service" (citation and internal quotation marks omitted)).

Additionally, an individual defendant, who is sued in his or her individual capacity, is not a "public entity" under Title II of the ADA. *See Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (nonprecedential) (affirming district court's dismissal of plaintiff's claim

brought under Title II of the ADA, where plaintiff's amended complaint "sued state employees in their individual capacities" and "not any 'public entity' as the statute requires") (quoting 42 U.S.C. § 12132); *Matthews*, 613 F. App'x at 170 (finding that "Title II of the ADA does not provide for suits against state officers in their individual capacities"). Similarly, individuals cannot be held liable under the Rehabilitation Act. *See Matthews*, 613 F. App'x at 169-170; *A.W. v. Jersey City Public Schools*, 486 F.3d 791, 804 (3d Cir. 2007).

Applying these principles here, the Court finds that Mokshefski's ADA and RA claims against the medical Defendants fail to state a claim upon which relief can be granted. The individual medical Defendants—Howard, Hicks/Fletcher, Sottile, Talasky, Bickle, and St. George—do not constitute public entities within the meaning of Title II of the ADA and, thus, are not subject to suit. *See Matthews*, 613 F. App'x at 169-70 (a contract medical provider of medical services to various state prisons "is not a public entity merely because it contracts with a public entity to provide some service."). Nor can they be held liable under the Rehabilitation Act. *See id.* Additionally, Wellpath, the private corporation providing medical services to inmates, also does not constitute a public entity, even if Wellpath contracts with the prison to provide such services. *See generally City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 610 (2015) (explaining that "[o]nly public entities are subject to Title II" of the ADA).

Further, "decisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA." *Nunez v. Prime Care Health, Inc.*, No. 19-CV-859, 2019 WL

1400466, at *1 n.3 (E.D. Pa. Mar. 27, 2019) (collecting cases). These claims would inevitably fail because the ADA and RA "prohibit[ ] disability-based discrimination, 'not inadequate treatment for the disability.'" *Kokinda v. Pennsylvania Dep't of Corr.*, 663 F. App'x 156, 159 (3d Cir. 2016) (nonprecedential) (quotation omitted). However, a plaintiff may demonstrate a cognizable claim under the ADA and the RA if they allege a disabled detainee was denied a reasonable accommodation that would have granted them meaningful access to prison activities and programs, including those that implicate medical care. *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 439 (E.D. Pa. 2020), *aff'd*, No.21-1019, 2021 WL 6101246 (3d Cir. Dec. 21, 2021). Reviewing the sufficiency of Mokshefski's allegations as they relate to his ADA and RA claims, the Court finds that he has not satisfied his burden as the alleged denial of treatment for a disability is not actionable under the ADA and RA. *Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) (nonprecedential) (citing *Bryant v. Madrigan*, 84 F.3d 246, 248 (7th Cir. 1996)). Nor is medical malpractice. *Bryant*, 84 F.3d at 248. Moreover, while Mokshefski may have been unable to partake in certain activities due to his injury, it does not necessarily follow that the medical Defendants denied him any accommodations *because* of his injury. *See Brown v. Pa. Dep't of Corr.*, 290 F. App'x 463, 467 (3d Cir. 2008) (nonprecedential) (plaintiff must allege "facts sufficient to show" that he was excluded from reasonable accommodations "by reason of" his disability) (quoting 42 U.S.C. § 12132).

Accordingly, the Court will grant the medical Defendants' motion to dismiss the ADA and RA claims.

## IV. Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant Mokshefski leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). The following claims suffer from factual and legal deficiencies that make any attempt to cure by amendment futile—the Eighth Amendment claim against Defendants Howard, Hicks/Fletcher, Sottile, and Bickle; the medical malpractice claim against Defendants Howard, Hicks/Fletcher, Sottile, Talasky, Bickle, and St. George; and the ADA and RA claims against all medical Defendants. Accordingly, these claims will be dismissed without leave to amend.

## V. Conclusion

Based on the foregoing, the medical Defendants' motion (Doc. 32) to dismiss will be granted in part and denied in part. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: July 26, 2024